IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KENNETH ALLEN NEIGHBORS,

  Plaintiff,       No. CIV S-01-0596 LKK JFM P

 vs.

JANET CLARK-BARKER, et al.,

  Defendants.      FINDINGS & RECOMMENDATIONS
_____/

    Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. 1983. There are two claims remaining in this action.[1] First, plaintiff claims that defendant Clark-Barker violated his constitutional rights by making false allegations against plaintiff after plaintiff provided information to a prison social worker that threatened defendant Clark-Barker's job. Second, plaintiff claims that Gutierrez violated plaintiff's due process rights by making false statements as part of the investigation into the charges brought against plaintiff

/////

/////

/////

---

[1] All of plaintiff's other claims have been dismissed without prejudice for failure to exhaust administrative remedies. (See Order filed January 30, 2004.)

1

by defendant Clark-Barker. This matter is before the court on defendants' motion for summary judgment.[2]

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
>
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

---

[2] Plaintiff opposes the motion on several grounds. His contention that he was not given proper notice, pursuant to Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) of the requirements for opposing a summary judgment motion is without merit. (See Order filed May 8, 2002, at ¶ 9.) Plaintiff's contention that he was not properly notified of the deadline for service of discovery requests in this action is equally without merit. (See Scheduling Order, filed July 12, 2002; Revised Scheduling Order, filed July 14, 2004.) Finally, plaintiff's contention that defendants waived their right to bring the instant motion is without merit. (See Order filed September 1, 2004.)

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On May 8, 2002, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

ANALYSIS

I. Retaliation

Plaintiff claims that defendant Clark-Barker falsely told prison officials that plaintiff had obtained information about her personal life by stalking her. Plaintiff claims that the statements by defendant Clark-Barker were made in retaliation for information plaintiff had provided to a prison social worker that Clark-Barker had shared information about her personal life with, and accepted cards from, plaintiff. Defendant Clark-Barker seeks summary judgment on the grounds that (1) the undisputed facts show that defendant Clark-Barker was not retaliating against plaintiff when she initiated disciplinary action against him; and (2) she did not cause either his placement in administrative segregation or his transfer to Pelican Bay.

A. Undisputed Facts

At all times relevant to this action, plaintiff was an inmate confined at California Medical Facility (CMF), defendant Clark-Barker was a vocational instructor at CMF, and defendant Gutierrez was a correctional officer at CMF. Some time prior to the events at bar, plaintiff had completed defendant Clark-Barker's class and had been promoted to work for her as a clerk. On Friday, March 19, 1999, at the end of the work day plaintiff gave defendant Clark-

Barker a birthday card from her students. (Ex. D to Defendants' Statement of Undisputed Facts in Support of Motion for Summary Judgment, filed Oct. 14, 2004, Declaration of J. Clark-Barker in Support of Motion for Summary Judgment, at ¶ 3; Attachment 1 to Defendants' Ex. E.) The card included a personal note from plaintiff to defendant Clark-Barker, addressing her by her first name. (Attachment 1 to Defendants' Ex. E.)

On Monday, March 22, 1999, defendant Clark-Barker met with plaintiff's counselor, D. Speth, informed her that plaintiff had given defendant Clark-Barker and card and personal letter, and requested that plaintiff be immediately removed from his assignment as a clerk to defendant Clark-Barker. (Clark-Barker Declaration, at ¶ 5.) Defendant Clark-Barker completed a Multi-Purpose Worksheet, part of the procedure attendant to charging plaintiff with the disciplinary offense of overfamiliarity with staff. (Id. at ¶ 6.) Defendant Clark-Barker also wrote two general chronos, one requesting removal of plaintiff from his job assignment and the other documenting that plaintiff had given her the card and letter and that she had reported that event to plaintiff's counselor. (Id. at ¶ 8.)

On March 23, 1999, plaintiff's psychiatric social worker, C. John, went to Clark-Barker's classroom to retrieve plaintiff's personal property. (Id. at ¶ 9.) No items belonging to plaintiff were found immediately, but Johns returned later with a list of items belonging to plaintiff and their location. (Id.) At the second visit, Johns told Clark-Barker that plaintiff was claiming that the overfamiliarity was Clark-Barker's fault because she had shared personal information with plaintiff and accepted cards from him in the past. (Id.) Johns relayed to Clark-Barker a number of details provided by plaintiff (Id.) Clark-Barker immediately reported her conversation with Johns to the Investigative Services Unit (ISU). (Id.)

At all times relevant to this action, defendant Gutierrez was assigned to the ISU. (Defendants' Ex. E, Declaration of R. Gutierrez in Support of Motion for Summary Judgment, at ¶ 2.) Gutierrez was assigned to investigate the circumstances surrounding the events at bar. (Id. at ¶ 3.) As part of that investigation, he interviewed plaintiff and searched his cell. (Id. at ¶¶ 4-

5

5.) During the search, defendant Gutierrez removed calendars for the years 1998 and 1999, as well as journals written by plaintiff. (Id. at ¶ 5.) Each of the calendars had a notation in March for "Janet's" birthday. (Id.) Defendant Clark-Barker's first name is Janet. In addition, the journals had "numerous entries mentioning" defendant Clark-Barker. (Id.; see also Attachment 2 to Gutierrez Declaration.)

Based on the results of the interview, the cell search, Clark-Barker's report, and plaintiff's commitment offense, Gutierrez determined that "further investigation was warranted. (Id. at ¶¶ 5-7.) On March 23, 1999, Gutierrez wrote a general chrono recommending that plaintiff be placed in administrative segregation pending the conclusion of an investigation into allegations that plaintiff was "stalking" Clark-Barker. (Id. at ¶ 8 and Attachment 3 to Gutierrez Declaration.) Subsequently, Gutierrez conducted further investigation, at the end of which he concluded that there was insufficient evidence to charge plaintiff with stalking Clark-Barker, but that plaintiff was infatuated with Clark-Barker, was attempting to be overly familiar with her, and, for her safety, needed to be retained in administrative segregation until he could be transferred to another institution. (Gutierrez Declaration, at ¶ 13.) Plaintiff was placed in psychiatric administrative segregation on March 23, 1999 and retained in administrative segregation until July 20, 1999, when he was transferred to Pelican Bay State Prison. (Gutierrez Declaration, at ¶ 8; Defendants' Ex. A at 1-9.)

On April 21, 1999, plaintiff was convicted of the disciplinary offense of giving a birthday card to a staff member. (Defendants' Ex. A at 10.) On November 30, 2000, the Chief of the California Department of Corrections Inmate Appeals Branch directed that the rules violation report be reissued and reheard based on a finding that the hearing officer had improperly denied plaintiff's request to have Ms. Clark-Barker present at the hearing. (Defendants' Ex. A at 17-18.) At the subsequent hearing plaintiff was again found guilty of giving a birthday card to a staff member. (Id. at 23-24.)

/////

B <u>Legal Standards</u>.

In order for a prison inmate to prevail on a retaliation claim, the inmate must show that he engaged in conduct protected by the First Amendment and that retaliation for that conduct was the "substantial" or "motivating" factor behind the defendant's conduct. See <u>Soranno's Gasco, Inc. v. Morgan</u>, 874 F.2d 1310, 1314 (9th Cir. 1989). The inmate must also show an absence of legitimate correctional goals for the conduct he contends was retaliatory. See <u>Pratt v. Rowland</u>, 65 F.3d 802, 806 (9th Cir. 1995) (citing <u>Rizzo v. Dawson</u>, 778 F.2d 527, 532 (9th Cir. 1985)). "In a constitutional tort, as in any other, a plaintiff must allege that the defendant's actions caused him some injury." <u>Resnick v. Hayes</u>, 213 F.3d 443, 449 (9th Cir. 2000) (citing <u>Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 285-87 (1977). A retaliation claim may be brought to remedy an alleged injury that would not rise to the level of a due process violation. See <u>Austin v. Terhune</u>, 367 F.3d 1167, 1171 (9th Cir. 2004); <u>see also</u> <u>Hines v. Gomez</u>, 108 F.3d 265, 269 (9th Cir. 1997).

C. <u>Application</u>

In support of her motion for summary judgment, defendant Clark-Barker contends that the undisputed facts show that she initiated disciplinary proceedings against plaintiff on March 22, 1999, before plaintiff told plaintiff's psychiatric social worker, Mr. Johns, that defendant Clark-Barker was at fault and had provided personal information about herself to plaintiff.

In opposition to the motion, plaintiff does not dispute that the initiation of disciplinary proceedings occurred before his conversation with Johns, nor does he dispute Clark-Barker's assertion that her initiation of disciplinary proceedings was not retaliatory. Instead, plaintiff contends that the gravamen of his claim against defendant Clark-Barker is based on the allegation that he was "stalking" her. Plaintiff contends that defendant Clark-Barker made that allegation, which led to plaintiff's placement in administrative segregation, after plaintiff's conversation with his psychiatric social worker, Johns, was relayed to Clark-Barker. Defendant

7

Clerk-Barker denies she ever accused plaintiff of stalking her, though she does aver that "[a]fter my conversation with Mr. John it was even more clear to me that Neighbors had been intensively observing me, and that he had interpreted every conversation I had with the class, or with him as my clerk, as a personal communication with him." (Clark-Barker Declaration, at ¶ 15.)

        The crux of the dispute between the parties is whether defendant Clark-Barker made a false allegation that plaintiff was stalking her and falsely denied that she had shared personal information with plaintiff to save her job after she learned that plaintiff had told his counselor that defendant Clark-Barker had shared personal information with plaintiff in the past. That dispute, however, is not material to resolution of the retaliation claim against defendant Clark-Barker. The injury complained of by plaintiff in this action is his placement in administrative segregation and, ultimately, his transfer to Pelican Bay; plaintiff contends that defendant Clark-Barker's allegedly false and retaliatory allegation that plaintiff was stalking her caused this injury.

        The undisputed evidence of record, however, shows that the initial recommendation to place plaintiff in administrative segregation was made by defendant Gutierrez and was based on (1) the disciplinary report by defendant Clark-Barker (which did not include a stalking allegation); (2) statements made by plaintiff to defendant Gutierrez during an interview; (3) the calendars and journals confiscated from plaintiff's cell; and (4) plaintiff's commitment offenses. That information led defendant Gutierrez to determine that further investigation was required into whether plaintiff was stalking defendant Clark-Barker. Ultimately, defendant Gutierrez reached the conclusion that there was "insufficient evidence to support a disciplinary charge of stalking." (Gutierrez Declaration, at ¶ 13.) He further concluded, however, that plaintiff was infatuated with defendant Clark-Barker and that, for her safety, plaintiff should be retained in administrative segregation and transferred to another institution. (Id.)

/////

Defendant Gutierrez' decision to conduct further investigation into whether plaintiff had obtained personal information about defendant Clark-Barker by "stalking" her was based primarily on plaintiff's own actions and writings. Moreover, plaintiff's placement in administrative segregation and his transfer to Pelican Bay were not grounded solely in the stalking allegation; plaintiff was retained in administrative segregation and transferred after the investigation concluded with a finding that there was insufficient evidence to charge him with stalking defendant Clark-Barker.

In accordance with the foregoing, this court finds that defendant Clark-Barker's alleged false statements were not the cause of the injuries complained of in this action. For that reason, defendant Clark-Barker is entitled to summary judgment.

II. Procedural Due Process

Plaintiff also claims that defendant Gutierrez violated his right to due process by arbitrarily recommending that plaintiff be placed, and then retained, in administrative segregation.

With respect to his procedural due process claim against defendant Gutierrez arising out of his placement in administrative segregation, "[d]ue process, in the administrative context, merely requires that the prison officials provide the inmate with 'some notice of the charges against him and an opportunity to present [the inmate's] views to the prison official charged with deciding whether to transfer [the inmate] to administrative segregation.' Toussaint v. McCarthy, 801 F.2d 1080, 1099 (9th Cir.1986) (quotation and citation omitted), cert. denied, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987)." Barnett v. Centoni, 31 F.3d 813, 815 (9th Cir. 1994).

The undisputed evidence of record shows that plaintiff was given notice of the disciplinary charges and the investigation that formed the basis for his initial placement in administrative segregation, that he was interviewed, and that he had regular hearings with an institution classification committee following his placement in administrative segregation.

(Defendants' Ex. D.) Plaintiff's due process rights were not violated by defendant Gutierrez's recommendations that plaintiff be placed and retained in administrative segregation.

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Defendants' October 14, 2004 motion for summary judgment be granted; and

2. Judgment be entered in accordance with this order and the order filed in this action on January 30, 2004.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 16, 2005.

UNITED STATES MAGISTRATE JUDGE

12
neig0596.57